Ross W. SORRELS, Plaintiff–
Appellant,

v.

Ronald McKEE; David Buss; Cly Evans; Archie Grant; Loreli, Cruthers; Kay Walter; Jim Blodgett; Joseph Lehman, Defendants–Appellees.

No. 01–35222.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 7, 2002.

Opinion Filed May 2, 2002.

Amended Opinion Filed May 17, 2002.

Noah Levine, Perkins Coie LLP, Seattle, WA, for the plaintiff-appellant.

Ross W. Sorrels, pro se plaintiff, Yakima, WA, for the plaintiff-appellant.

Michael T. Mitchell, Attorney General's Office, Olympia, WA, for the defendants-appellees.

Before ALARCON and SILVERMAN, Circuit Judges, and TEILBORG, District Judge.*

## OPINION

SILVERMAN, Circuit Judge.

In 1996, a district court in the Eastern District of Washington declared unconstitutional a policy of the Washington State Penitentiary prohibiting inmates from receiving books and magazines that they did not pay for themselves from their prison accounts. That decision was subsequently upheld on appeal. *Crofton v. Roe*, 170 F.3d 957 (9th Cir.1999). Meantime, while the appeal in *Crofton* was pending, prison officials at a different Washington prison continued to enforce a similar "no gift publication" policy and sent back two publications mailed to plaintiff Ross Sorrels as gifts. Sorrels then brought this lawsuit against the prison officials involved in rejecting the items. The officials defended on grounds of qualified immunity, arguing that until the Ninth Circuit upheld the district court decision in *Crofton*, the law with respect to the "no gift publication" policy was not "clearly established." We agree, and affirm the district court's grant of summary judgment in favor of the defendants.

## I. BACKGROUND

Ross Sorrels was a prisoner at the Airway Heights Corrections Center ("AHCC") in the state of Washington. In June 1997, Doubleday, the publisher of *The Partner* by John Grisham, sent Sorrels a complimentary copy of the book. On account of AHCC's "no gift publication" policy,[1] by which inmates may receive publications only if they pay for them out of their inmate accounts, the prison officials notified Sorrels they had received the book but refused to let him have it. Sorrels appealed this refusal through the prison's internal grievance system, but to no avail, and the book was mailed to his family in July 1997.

In March 1998, Sorrels sent a letter to various prison officials, including defendants Walter, Lehman, Blodgett, and Evans, informing them that the District Court for the Eastern District of Washington, where AHCC is located, had issued two unpublished decisions in 1996 holding unconstitutional the "no gift publication" policy at the Washington State Penitentiary at Walla Walla. Those cases were *Crofton v. Ocanaz*, No. CY–95–3142–LRS (E.D.Wash. Dec. 17, 1996), *aff'd. sub nom Crofton v. Roe*, 170 F.3d 957 (9th Cir. 1999); and *Crofton v. Spalding*, No. CS–94–208–CI (E.D.Wash. May 14, 1996). Prison officials responding to Sorrels's let-

---

* The Honorable James A. Teilborg, United States District Judge for the District of Arizona, sitting by designation.

1. The relevant policy provisions are Washington Department of Corrections Policy 450.100, Procedure (E)(2), which reads, "Publications containing material which ... is deemed to be a threat to legitimate penological objectives as stated in this policy ... may be rejected"; AHCC Field Instruction 450.100, Procedures (B)(2)(s) & (t), which provide that "mail contain[ing] a publication ... not mailed directly by the publisher/retailer" or "mail containing items not ordered, and approved in advance, through Institution-designated channels," "will be refused"; and AHCC Field Instruction 440.000, Procedure (B)(5), which provides that "[a]ll inmate vendor purchases must come from the inmate's account, and ... must cover the full amount of the purchase."

ters reiterated the Washington Department of Corrections policy banning gift publications, informed Sorrels that the policy was under review, and distinguished the cases and noted that the Ninth Circuit had not yet ruled on the issue.

On May 15, 1998, Sorrels filed a pro se complaint under 42 U.S.C. § 1983. The complaint alleged (1) a violation of the First Amendment in rejecting the free publication, (2) a deprivation of due process by providing inadequate grievance procedures, and (3) a conspiracy to violate Sorrels's constitutional rights. Sorrels sued Ronald McKee and David Buss, who work in the AHCC mail room; Cly Evans, Archie Grant, Loreli Cruthers, and Kay Walter, who work at AHCC in administrative roles; and James Blodgett and Joseph Lehman, who work in prison administration at the state level.

The defendants filed a motion to dismiss in September 1998, which the court treated in part as a motion for summary judgment. The magistrate judge issued a first Report and Recommendation, later adopted by the district court, (1) denying defendants' motion to dismiss Sorrels's First Amendment claim, on the grounds that the "no gift publication" policy was unconstitutional under *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); but (2) granting summary judgment for the defendants on grounds of qualified immunity as to Sorrels's claims for monetary damages. The magistrate judge also issued an order staying the proceedings pending resolution of the appeal of *Ocanaz*, captioned *Crofton v. Roe*, Nos. 97–35121 & 97–35140.

On May 5, 1999, this court issued a decision in *Crofton v. Roe*, 170 F.3d 957 (9th Cir.1999). The panel held that the "Washington Prison Regulation that prohibits the receipt by a prisoner of any book, magazine, or other publication, unless the prisoner ordered the publication from the publisher and paid for it out of the prisoner's own prison account," *id.* at 958, was unconstitutional under *Turner*, *id.* at 958–61. Concluding that the inmate "ha[d] not shown any damages stemming from the ban on gift publications," however, the panel did not reach Crofton's claim that the district court had erred in granting the defendant prison officials qualified immunity. *Id.* at 961.

Sorrels filed a supplemental complaint to add an allegation that AHCC had rejected a gift copy of the *Georgetown Law Journal* sent to Sorrels by an attorney on or about April 1, 1998. Because the prison had rejected the journal without first notifying Sorrels, he alleged a procedural due process violation in addition to another violation of the First Amendment.

The Washington Department of Corrections, which operates both Airway Heights Corrections Center and Washington State Penitentiary, whose regulations were at issue in *Crofton v. Roe*, amended the "no gift publication" policy, effective January 5, 2000, to allow receipt of gift publications.[2] Defendants filed a motion for summary judgment immediately after the new policy went into effect. The magistrate issued a second Report and Recommendation, recommending (1) dismissal of the due process redress-of-grievances claim; (2) granting summary judgment on qualified immunity grounds for defendants on the First Amendment claim; (3) granting summary judgment for defendants on the conspiracy claim; (4) granting summary judgment for defendants on the procedural

---

**2.** As amended, Washington Department of Corrections Policy Directive 450.100, Directive (VII)(B), reads: "Offenders may receive gift *subscriptions* and/or *publications* from any party other than from another offender or the friends or family of another unrelated offender." (emphasis in original).

due process claim as an isolated incident, constituting only negligence; and (5) dismissing as moot Sorrels's request for injunctive and declaratory relief in light of his transfer to another prison and the prison's subsequent change in policy. This second Report and Recommendation was adopted by the district court, and judgment entered for defendants, on July 24, 2000. Sorrels appeals only the grant of qualified immunity on his First Amendment claim and the dismissal of his due process claim for failure to notify.

## II. JURISDICTION AND STANDARD OF REVIEW

■ This court has jurisdiction pursuant to 28 U.S.C. § 1291. A lower court's decision regarding qualified immunity is reviewed de novo. *Elder v. Holloway*, 510 U.S. 510, 516, 114 S.Ct. 1019, 127 L.Ed.2d 344 (1994). A district court's grant of summary judgment is reviewed de novo. *Weiner v. San Diego County*, 210 F.3d 1025, 1028 (9th Cir.2000). Summary judgment is appropriate if the evidence, read in the light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## III. ANALYSIS

On appeal, Sorrels advances two arguments. First, he argues that the defendants are not entitled to qualified immunity on the First Amendment claim. He asserts that the district court erred in concluding that the illegality of AHCC's "no gift publication" policy was not clearly established. Second, Sorrels argues that the district court erred in dismissing his procedural due process claim as mere negligence not actionable under § 1983. We address each of these arguments in turn.

### A. Qualified Immunity on First Amendment Claim

■ 42 U.S.C. § 1983 allows individuals to recover for deprivations of constitutional rights that occur under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330–31, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Qualified immunity, however, serves to shield government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity thus serves to protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

■ In ruling on a qualified immunity defense, a court must consider two questions. First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This first prong of qualified immunity thus mirrors the substantive summary judgment decision on the merits. Second, if the plaintiff has alleged a deprivation of a constitutional right, a court "is to ask whether the right was clearly established." *Id.* The plaintiff bears the burden of showing that the right at issue was clearly established under this second prong. *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993).

■ The district court held that the "no gift publication" policy was unconstitutional under the first prong of qualified immunity. Defendants concede, in light of *Crof-*

*ton v. Roe*, that Sorrels has alleged a violation of his constitutional rights. That is, the prison's (former) policy of rejecting gift publications for which inmates had not paid was not rationally related to a legitimate penological interest as required by *Turner*. The policy therefore violated Sorrels's First Amendment rights to receive publications free from censorship.

■ The court below found for the defendants, however, on the second prong of qualified immunity. The right at issue in this case is the First Amendment right to receive publications that the inmate himself did not pay for from his own prison account. To determine if the defendants are entitled to qualified immunity under the second prong, then, we must ask: Was the law so "clearly established" at the time AHCC rejected *The Partner* (June 1997) and the *Georgetown Law Journal* (April 1998) that AHCC officials should have known that the "no gift publication" policy was unconstitutional under *Turner*? Surveying the legal landscape as it existed in 1997 and 1998, were "[t]he contours of the right ... sufficiently clear that a reasonable official would understand that what he [was] doing violate[d] that right"? *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *see also Wood v. Ostrander*, 879 F.2d 583, 591 (9th Cir.1989).

■ If so, then prison officials knew or should have known of the illegality of their actions, and qualified immunity is no defense to liability. The relevant inquiry under this second prong is wholly objective; an official's subjective belief as to the lawfulness of his conduct is irrelevant. *Anderson*, 483 U.S. at 641, 107 S.Ct. 3034.

The existence of binding precedent holding unconstitutional a prison policy requiring inmates to pay for publications received would easily dispose of prong two. The law would be clearly established and defendants' qualified immunity defense would fail. However, neither the district court, nor the parties, nor our own research has unearthed Ninth Circuit or Supreme Court caselaw on point predating our 1999 decision in *Crofton v. Roe*. We next look to the decisions of our sister Circuits, district courts, and state courts. *Capoeman v. Reed*, 754 F.2d 1512, 1514 (9th Cir.1985). However, either Washington's policy was unique among state prisons, or no other state's prisoners had seen fit to challenge similar policies, as there appear to be no published decisions on point prior to 1999 in any jurisdiction, at any level, concerning the constitutionality of a prison regulation requiring inmates to pay for publications they receive.

■ Still this does not end our inquiry. In deciding the second prong of qualified immunity, "[i]t is not necessary that the alleged acts have been previously held unconstitutional, as long as the unlawfulness [of defendants' actions] was apparent in light of preexisting law." *Malik v. Brown*, 71 F.3d 724, 727 (9th Cir.1995) (citing *Anderson*, 483 U.S. at 640, 107 S.Ct. 3034). "Closely analogous preexisting case law is not required to show that a right was clearly established." *White v. Lee*, 227 F.3d 1214, 1238 (9th Cir.2000). In other words, while there may be no published cases holding similar policies constitutional, this may be due more to the obviousness of the illegality than the novelty of the legal issue. If, for example, AHCC's policy prohibited all publications whose title contained more than four words, the lack of cases holding such a policy unconstitutional would not mean that the law was not clearly established. The policy would be so obviously unrelated to any conceivable penological interest that no prison official could reasonably believe that its enforcement was legal, and a defense of qualified immunity would fail.

To defeat the defendants' claim of qualified immunity, then, Sorrels had to show that the policy was such a far cry from what any reasonable prison official could have believed was legal that the defendants knew or should have known they were breaking the law. However, it is entirely reasonable that the defendants could have thought that the policy would pass muster under *Turner*. One of the rationales put forth (and rejected) in *Crofton v. Roe* was preventing "strong-arming," by which an inmate would threaten retaliation if the friends or family of another inmate did not send requested gift items. 170 F.3d at 959–61. The panel noted that "the district court said [this] was the most reasonable argument" put forth by the prison to justify the policy. *Id.* at 959. We of course do not reexamine the conclusion in *Crofton v. Roe* that this rationale is insufficient to justify the "no gift publication" policy. We do note, however, that the policy's illegality was not so obvious that any prison official involved in enforcing it should have known he was breaking the law. In other words, while the policy fails under *Turner*, it at least passes the laugh test, unlike the hypothetical policy rejecting publications due to the number of words in the title. Considering the complete lack of published decisions on point and the fact that defendants reasonably could have believed that the "no gift publication" policy was constitutional, it cannot be said that the law was clearly established until we decided *Crofton v. Roe* in 1999.

Sorrels also urges us to consider two unpublished district court decisions in determining whether the law was clearly established: *Ocanaz*, No. CY–95–3142–LRS (E.D.Wash. Dec. 17, 1996) (holding the policy at another Washington prison unconstitutional); and *Spalding*, No. CS–94–208–CI (E.D.Wash. May 14, 1996) (same). We have held that unpublished decisions of district courts may inform our qualified immunity analysis. *See Prison Legal News v. Cook*, 238 F.3d 1145, 1152 (9th Cir.2001) (relying on unpublished district court cases).

The district court rulings in *Ocanaz* and *Spalding* do not change our conclusion that the law was not clearly established. At most, they show that the law was in the process of becoming established. This is not surprising, as it will be a rare instance in which, absent any published opinions on point or overwhelming obviousness of illegality, we can conclude that the law was clearly established on the basis of unpublished decisions only. Indeed, common to cases in which qualified immunity is unavailable is that "the issue ... has been litigated extensively and courts have consistently recognized" the right at issue. *Malik*, 71 F.3d at 729–30. The "no gift publication" policy, by contrast, has not been extensively litigated and, to the extent it has, cases go both ways.

We emphasize one additional point: This is not a case in which defendants chose not to appeal unfavorable trial court rulings to avoid a decision in the court of appeals clearly establishing the law. To the contrary, it was the prison officials in *Crofton v. Roe* who appealed the district court ruling striking down the "no gift publication" policy, thus teeing up the issue for a definitive ruling in the Ninth Circuit. It is entirely possible that the law could become clearly established when a party repeatedly litigates an issue, repeatedly loses, but avoids an adverse appellate decision by opting not to appeal. Such was not the case here, however.

In sum, we conclude that defendants are entitled to summary judgment as to Sorrels's First Amendment claim. There is no published caselaw on point, and the policy was not so far-fetched that its illegality was necessarily obvious to a reasonable prison official. Consideration of

unpublished decisions presented by the parties does not alter our conclusion. We therefore affirm the district court's grant of summary judgment as to Sorrels's First Amendment claim on grounds of qualified immunity.

### B. Dismissal of Procedural Due Process Claim

Sorrels's second argument is that the district court erred in granting summary judgment for defendants on his procedural due process claim that the *Georgetown Law Journal* was rejected without notice. It is undisputed that "withhold[ing] delivery of [inmate mail] must be accompanied by minimum procedural safeguards." *Procunier v. Martinez*, 416 U.S. 396, 417–18, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 413–14, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). Specifically, an inmate "has a Fourteenth Amendment due process liberty interest in receiving notice that his incoming mail is being withheld by prison authorities." *Frost v. Symington*, 197 F.3d 348, 353 (9th Cir.1999). Thus, completely separate from the question of whether withholding inmate gift mail is constitutional (it is not) is the issue of whether such withholding complied with the requisite procedural safeguards.

An initial question is whether the prison ever in fact received the *Journal*. Because this case was resolved below on a summary judgment motion, all facts must be taken in the light most favorable to Sorrels as the non-moving party. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir.2000) (en banc). Though defendants seesaw in their briefs as to whether or not they received the *Journal*, they concede that they admitted this fact below. Defendants have waived the right to argue to the contrary on appeal. *See Export Group v. Reef Indus., Ind.*, 54 F.3d 1466, 1470–71 (9th Cir.1995) (by pleading certain facts in

the district court, a party may waive the right to allege contrary facts on appeal).

If a meaningful post-deprivation remedy exists for an alleged deprivation of property, then that post-deprivation remedy is sufficient to satisfy the requirements of due process. *Parratt*, 451 U.S. at 543–44, 101 S.Ct. 1908. Furthermore, while mere negligence on the part of prison officials is not actionable as a due process violation under § 1983, *Daniels*, 474 U.S. at 328, 106 S.Ct. 662, "a deprivation ... caused by conduct pursuant to established state procedure, rather than random and unauthorized action," does state a § 1983 claim. *Hudson v. Palmer*, 468 U.S. 517, 532, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). In such a case, "post-deprivation remedies [will] not satisfy due process ...." *Id.*

Sorrels argues that because refusing delivery of the journal was pursuant to official policy, a post-deprivation remedy is inadequate and he has alleged a deprivation of due process. This argument conflates Sorrels's First Amendment and procedural due process claims, and it confuses the relevant actions of prison officials—rejecting Sorrels's mail, as opposed to failing to notify Sorrels of the rejection—underlying each claim.

It was not the prison's rejection of the publication that makes out a procedural due process claim; it is the *lack of notice* of that rejection under *Procunier*. Only if the failure to provide notice was pursuant to prison policy does this constitute a due process violation actionable under § 1983. There is no evidence that this failure was anything other than a random mistake. Defendants maintain that the lack of notice was "a rare and inadvertent action," and Sorrels admits that he does not "allege or present any evidence that there is a widespread refusal or a custom or practice not to issue mail rejections."

Thus, while the policy by which the *Journal* was *rejected* cannot be characterized as simple negligence—an unauthorized event for which there is a meaningful post-deprivation remedy—Sorrels concedes that the *failure to notify* of the rejection was unauthorized and contrary to prison policy. It constitutes at most negligence and does not state a due process violation under § 1983. We therefore affirm the district court's dismissal of Sorrels's procedural due process claim.

AFFIRMED.