**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**November 30, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

WENDEL R. WARDELL, JR.,

        Plaintiff-Appellant,

v.

SONDRA DUNCAN, individually and
officially; GLORIA MASTERSON;
JOSEPH G. ORTIZ, officially;
TONEY WELCH, individually and
officially,

        Defendants-Appellees.

No. 05-1210

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 02-CV-2204-PSF-OES)**

---

Submitted on the briefs:

Wendel R. Wardell, Jr., Pro Se.

Nicole S. Gellar, Assistant Attorney General, John W. Suthers, Attorney General
of Colorado, Denver, Colorado, for Defendants-Appellees.

---

Before **HENRY**, **ANDERSON**, and **McCONNELL**, Circuit Judges.

---

**ANDERSON**, Circuit Judge.

Plaintiff Wendel R. Wardell, Jr. appeals from a district court order granting defendants' motion for summary judgment and dismissing his pro se prison civil rights action brought under 42 U.S.C. § 1983. He also challenges the denial of motions to amend his pleadings and to compel compliance with discovery requests. We affirm for the reasons explained below.[*]

This action was prompted by prison officials' interception of three parcels mailed to plaintiff in March and April 2001, when he was incarcerated at the Fremont Correctional Facility in Canon City, Colorado. The first contained books from a "Mystery Guild" book club; the other two contained legal documents from the Colorado State Archives and the Library of Congress which had been purchased for plaintiff by a third party who was listed as another inmate's visitor and, thus, fell within a Colorado Department of Corrections (CDOC) prohibition on gifts from unauthorized sources.

In his complaint, plaintiff characterized "the nature of the case" as "a constitutional challenge" to CDOC policies requiring prisoners to "purchase all hobby work, legal materials, books and magazine subscriptions from their inmate trust fund accounts" and banning gifts of such materials from unauthorized

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

sources. R., Doc. 3 at 3. He pled claims under (1) the First Amendment, alleging that the prohibition on gifts was not reasonably related to any penological goals and that his pursuit of other cases had been impeded by the loss of legal materials, *id.* at 4-4B; and (2) the Due Process Clause, alleging that he was deprived of property without recourse to challenge the deprivation, *id.* at 5. He also pled a claim under the Racketeer Influenced and Corrupt Organizations Act, which he has effectively abandoned.

At the outset, it is important to clarify a significant limitation on the scope of this appeal. Although the complaint suggests a broad facial attack on the regulations prohibiting gift purchases of subscriptions and the like, the case has been narrowed substantially due to a mootness consideration. While this action was pending below, plaintiff was paroled out of the state prison system. The district court consequently dismissed his claims insofar as they sought declaratory and injunctive relief invalidating the regulations. That disposition was correct, *see Wirsching v. Colorado*, 360 F.3d 1191, 1196 (10th Cir. 2004) (following *Green v. Branson*, 108 F.3d 1296, 1299 (10th Cir. 1997)),[1] and left only

_____

[1]     Plaintiff argued below that his claims for injunctive and declaratory relief were not moot because he remained "in custody" in light of his parole status. He misunderstands the thrust of the mootness analysis. The point is that he was not incarcerated in a facility governed by the regulations he challenges; the fact that he left the facility on parole or supervised release is immaterial. *See McAlpine v. Thompson*, 187 F.3d 1213, 1217-18 (10th Cir. 1999) (collecting cases).

a damages claim based on application of the regulations to plaintiff's particular situation.

## DISMISSAL OF DUE PROCESS CLAIM

Early in the case, the magistrate judge recommended granting a motion to dismiss the due process claim. When plaintiff did not object, the district court summarily adopted the recommendation and dismissed the claim. Defendants argue that the matter is now beyond challenge, invoking our "firm waiver rule" under which timely objection to the magistrate judge's recommendation is a condition for appellate review. *See, e.g.*, *id.* at 1197. We agree.

The waiver rule applies to pro se litigants, provided they were informed of the time period for objecting and the consequences of failing to object. *Morales-Fernandez v. INS*, 418 F.3d 1116, 1119 (10th Cir. 2005). Here, the magistrate judge specifically advised plaintiff of these conditions. R., Doc. 58 at 3, 10.

The waiver rule may be suspended when the "interests of justice" warrant, *Wirsching*, 360 F.3d at 1197-98, or when the aggrieved party makes the onerous showing required to demonstrate plain error, *Morales-Fernandez*, 418 F.3d at 1120. While plaintiff continues to argue he was denied due process, he does not even mention the procedural omission on which the district court's disposition of his due process claim was based, much less argue that this disposition was

somehow unjust. Nor has he submitted a reply brief to respond to defendants' specific invocation of the waiver rule on appeal. He did argue below, after the claim was dismissed, that his failure to object was excusable because the recommendation was sent to a prison from which he had been transferred. As he had failed to notify the court of his change of address, however, he "bore some responsibility for the failure to receive the . . . recommendation" and, thus, interests of justice would not warrant our suspension of the waiver rule even if he had argued this point on appeal. *Wirsching*, 360 F.3d at 1197 (explaining basis for enforcement of waiver rule in *Theede v. United States Department of Labor*, 172 F.3d 1262, 1268 (10th Cir. 1999)).

We also see no basis for suspending the waiver rule under the plain error standard. "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Morales-Fernandez*, 418 F.3d at 1122-23 (quotation omitted). Plaintiff's due process claim was premised on the lack of a post-deprivation remedy for the diversion and destruction of materials sent to him in the mail. R., Doc. 3 at 5. The magistrate judge concluded that this claim was not legally viable: if based on negligence, it failed under *Daniels v. Williams*, 474 U.S. 327, 328 (1986); if based on deliberate misconduct, it failed in light of the remedy for willful and wanton conduct by

public employees provided in Colo. Rev. Stat. § 24-10-118, which encompasses damage to or loss of property, Colo. Rev. Stat. § 24-10-103(2). *See* R., Doc. 58 at 7. Plaintiff does not contest either part of this rationale on appeal (and did not do so below in response to the motion to dismiss), much less demonstrate an error so plain and substantial as to satisfy the other requirements for plain error review cited above.[2] We need not pursue the point any further. Indeed, to do so would undercut not only the firm waiver rule in particular but also general limitations on review of issues not preserved in district court and/or properly presented on appeal.

## FIRST AMENDMENT CLAIMS
### (Access to Courts/Right to Receive Mail)

We emphasize again that this case is limited to plaintiff's claim for damages based on particular instances in which enforcement of the challenged prison regulations allegedly interfered with his constitutional rights. Moreover, in this First Amendment context it is also material to note that his claim does not include the incident involving the Mystery Guild books, which was eliminated from the case as a result of the same magistrate judge recommendation to which

---

[2] Plaintiff's appellate arguments focus on the lack of notice provided *to the sender* of excluded materials. It was certainly not plain error for the magistrate judge to disregard due process interests of non-parties, which plaintiff does not have standing to assert.

-6-

he waived review as previously discussed.[3] *See* R., Doc. 58 at 6; Doc. 59 at 1-2.

Given the circumstances, our review is limited to the First Amendment objections

plaintiff raised regarding the interception of legal materials purchased for him by

a third party who had ties to another inmate. He contends this interfered with his

(1) right of access to the courts and (2) right to receive mail.

## A. Access to Courts

The district court rejected the access-to-courts aspect of plaintiff's claim

because he had not made the showing of prejudice required by *Lewis v. Casey*,

518 U.S. 343 (1996). A plaintiff "must show that non-delivery of his legal mail[4]

resulted in 'actual injury' by 'frustrat[ing],' 'imped[ing],' or 'hinder[ing] his

efforts to pursue a legal claim.'" *Simkins v. Bruce*, 406 F.3d 1239, 1243

(10th Cir. 2005) (quoting *Lewis*, 518 U.S. at 351-53 & n.3). Conclusory

allegations of injury in this respect will not suffice. *Cosco v. Uphoff*, 195 F.3d

---

[3]     The magistrate judge concluded that plaintiff's specific complaint about the books, which turned on their status as property per se (i.e., he did not object to his inability to read the books but to their destruction in lieu of return to the sender), did not implicate his First Amendment rights, though it might suggest a takings claim. R., Doc. 58 at 6. The judge held that such a claim would fail, however, in light of the fact that plaintiff had not yet exhausted a state remedy available for the property loss. *Id.* As discussed earlier, our review of the magistrate judge's recommendation is barred by the firm waiver rule unless the ruling in question rises to the level of plain error. No such error is evident here.

[4]     Here we are not dealing with "legal mail," in the sense of correspondence with courts or counsel, but only with private mail enclosing materials of a legal nature. Even treating the latter as indistinguishable from the former, however, we conclude plaintiff's access claim fails for the reasons discussed above.

1221, 1224 (10th Cir. 1999); *cf. Simkins*, 406 F.3d at 1243-44 (recognizing sufficient showing of actual injury where prisoner demonstrated specific impact on prosecution of particular case). Here, other than a conclusory allegation in the complaint that a petition for a writ of certiorari had, for unspecified reasons, been dismissed, *see* R., Doc. 1 at 4A, plaintiff has not alleged and substantiated any injury to satisfy the *Lewis* requirement. Indeed, he does not even mention the point on appeal.

Accordingly, to the extent plaintiff's First Amendment claim rests on the denial of access to the courts, it was properly dismissed for lack of actual injury. That leaves plaintiff's reliance on his right to receive mail per se.

## B. Right to Receive Mail

*Turner v. Safley*, 482 U.S. 78 (1987), established "that restrictive prison regulations [including restrictions on First Amendment rights] are permissible if they are reasonably related to legitimate penological interests and are not an exaggerated response to those concerns." *Beard v. Banks*, 126 S. Ct. 2572, 2578 (2006) (internal quotations and citation omitted). *Turner* set out four factors for assessing reasonableness in this context:

> First, is there a valid, rational connection between the prison
> regulation and the legitimate governmental interest put forward to
> justify it? Second, are there alternative means of exercising the right
> that remain open to prison inmates? Third, what impact will
> accommodation of the asserted constitutional right have on guards
> and other inmates, and on the allocation of prison resources

generally? And, fourth, are ready alternatives for furthering the governmental interest available?

*Id.* (internal quotations, alterations, and citations omitted).

**First *Turner* Factor**

The materials at issue here were confiscated because they had been paid for by a third party who was on the list of visitors for another inmate. The narrow, neutral character of the operative restriction was summarized by the magistrate judge:

> The policies in question here ban gift purchases without even looking at content. There is no indication under this regulation that the prison is concerned with suppressing expression, but is instead concerned with increasing safety and alleviating the security issues posed by gift purchases and, in particular, gift purchases made by visitors of one inmate for another inmate. The restriction does not prevent inmates from corresponding with persons on the visitor list of another inmate; it simply does not allow them to receive items purchased by such persons.

R., Doc. 186 at 13. The penological purposes of the restriction were to prevent unauthorized bartering, extortion, contraband smuggling, and other prohibited and/or criminal activity inside the prison facilitated through the assistance or exploitation of third parties outside the prison; to prevent inmates from conspiring to manipulate and defraud members of the public; and to prevent the unauthorized practice of law by "jailhouse lawyers" selling legal services to other inmates and the public. *Id.* at 14-16. These objectives and their commonsense connection to the restriction in question (particularly regarding the involvement

of third parties in the furtherance of improper activities inside the prison) were substantiated by the affidavit of the Administrative Services Manager for the prison. *Id.* Doc. 104, Ex. A.

We owe deference to the professional judgment reflected in this affidavit. *Beard*, 126 S. Ct. at 2578 (following *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)). To defeat summary judgment, it is not enough for plaintiff to disagree with the views expressed in the affidavit; he must point to evidence creating genuine factual disputes that undermine those views. *Id.* (same). Absent such evidence, defendants' affidavit is sufficient to establish, on summary judgment, "that the regulations do, in fact, serve the function[s] identified" by the prison defendants. *Id.* at 2579; *see, e.g.*, *Wirsching*, 360 F.3d at 1199-1201 (upholding prison policy based on official's affidavit satisfying several *Turner* factors, including the first). Plaintiff points to no contrary record evidence here. Instead, he argues that decisions in other prison First Amendment cases, and an affidavit submitted for the plaintiff in one of those cases, support his claim here.

We do not decide as a general matter whether a plaintiff may effectively counter prison officials' evidentiary showing under *Turner* by relying on statements in judicial opinions favorable to other plaintiffs asserting First Amendment challenges to similar regulations. We need only note that the cases plaintiff relies on are too dissimilar to be analytically useful. *Turner* "requires

courts, on a case-by-case basis, to look closely at the facts of a particular case and the specific regulations and interests of the prison system in determining whether prisoner's constitutional rights may be curtailed." *Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002). The cases cited by plaintiff involved broader claims for equitable relief facially challenging more restrictive regulations than those at issue here (again, the limited scope of the damage claims under review must be kept in mind). *See Jacklovich v. Simmons*, 392 F.3d 420 (10th Cir. 2004) (reviewing claims for injunctive and declaratory relief by inmates and non-prison publishers broadly challenging Kansas regulatory scheme imposing absolute dollar limit on inmate purchases of books, newspapers and periodicals, prohibiting all gift subscriptions, and censoring materials without notice to the publisher); *Crofton v. Roe*, 170 F.3d 957 (9th Cir. 1999) (reviewing claim for injunction against absolute ban on gifts regardless of source, including inmate's own family). These cases also involved different sets of penological interests advanced in favor of the regulations and, of course, different evidentiary records fleshing out the interests to be weighed and compared.

Indeed, plaintiff wishes to take advantage of an item from the evidentiary record in *Jacklovich*. He argues that an affidavit submitted on behalf of the *Jacklovich* plaintiffs by a former prison official should be considered here in opposition to the otherwise unopposed affidavit offered in support of defendants'

motion for summary judgment.  Without deciding as a general matter whether evidentiary materials developed in one case may be judicially noticed as a means to augment a deficient record in another case, we hold only that the substantive and procedural differences between the cases in question make such a procedure inappropriate here.  Illustrating this, the very point for which plaintiff cites the *Jacklovich* affidavit is not directly relevant to the particular dispute before us.  Plaintiff notes that in the affidavit "[w]hile [the official] recognized the value of monitoring inmates' funds, he severely criticized a *blanket ban* on gift subscriptions as rationally connected to that goal."  Aplt. Opening Br. at 10 (emphasis added).  But, as we have previously explained, we are concerned here specifically with gift purchases *made by third persons linked to other inmates*, which, moreover, were regulated in furtherance of a set of prison interests that went beyond the fund monitoring discussed in the *Jacklovich* case.

In sum, defendants identified legitimate, neutral prison interests served by the restriction enforced in this case.  They supported their case with evidence of professional judgment which is entitled to deference and which plaintiff has failed effectively to challenge.  The first *Turner* factor supports summary judgment.

**Second *Turner* Factor**

In considering alternative means open to an inmate for exercising a right restricted by prison regulation, we have emphasized that the "alternatives 'need not be ideal . . . they need only be available.'" *Wirsching*, 360 F.3d at 1200 (quoting *Overton*, 539 U.S. at 135). Thus, even if not the "best method" from the inmate's point of view, if another means of exercising the right exists, the second *Turner* factor does not undercut the challenged restriction. *Id.* at 1201. That is clearly the case here. Plaintiff could have purchased materials himself, including with the financial assistance of family members, and he has not alleged there is any monetary limit on his ability to do so. Moreover, to the extent the focus of the inquiry here is specifically on legal materials, there was no dispute in this case that he had access to the law library at the prison. In this respect, the fact that he would have use of the legal materials through library loan rather than outright ownership is not important to the analysis. *See Thornburgh v. Abbott*, 490 U.S. 401, 417-18 (1989) (explaining how cases applying second *Turner* factor reflect that it must be approached "sensibly and expansively," so as to encompass different practical alternatives that satisfy same broad underlying function).

**Third *Turner* Factor**

Regarding the impact of accommodating plaintiff's asserted right, a main concern of prison officials with respect to third-party gifts (and especially gifts received from third parties associated with other inmates), is the opportunity these offer inmates to engage in illegal, prohibited, or restricted activities (recited *supra* at page 9) with the assistance of–or at the expense of–members of the public who are beyond the supervision and control of the prison. To counter such undesirable effects, the prison

> would have to exercise significantly more inspection and supervision over inmates and mail. [It] would have to assign or specially employ staff members to investigate suspected incidents of bartering using third parties, the unlawful practice of law without a license as well as various other types of crimes and illicit activities. The [prison] does not have the resources to assign or specially employ staff members for this purpose. In addition, it does not have the authority or capacity to investigate the actions of third parties occurring outside the prison.

R., Doc. 104, Ex. A at 4. While the degree of impact may be open to debate, we cannot gainsay defendants' basic judgment that permitting third-party gifts and then trying to control the resultant security problems through reactive efforts within the prison would pose a burden on staff and resources.

**Fourth *Turner* Factor**

Explaining this last factor, the Supreme Court stated that "the absence of ready alternatives is evidence of the reasonableness of a prison regulation," while "the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an exaggerated response to prison concerns." *Turner*, 482 U.S. at 90. The Court went on to clarify that "[t]his is not a 'least restrictive alternative' test: prison officials do not have to set up and then shoot down every conceivable method of accommodating the claimant's constitutional complaint." *Id.* at 90-91. Rather, this factor weighs against the regulation *if the inmate* "can point to an alternative that fully accommodates the prisoner's rights *at de minimis cost to valid penological interests*." *Id.* at 91 (emphasis added).

Defendants' evidence regarding the burdens of accommodation cited above also indicates the absence of obvious and easy alternative security measures. The compensatory efforts that would be required if the challenged restriction were dropped appear, rather, to be complicated and onerous. Plaintiff contends that prison officials could simply monitor gifts by requiring the third party to provide relevant information such as the source, amount, and manner of payment. But, as defendants explain in commonsense terms, this proposed alternative would entail data collection, processing, management, and application requiring substantial staff resources and would not, in any event, be as effective in preventing inmates

from using third parties (here, specifically, a visitor with ties to another inmate) as "passthroughs" for bartering and other efforts to circumvent prison rules. Plaintiff's proposed alternative fails to accommodate his interest "with so little cost to penological goals that [it] meet[s] *Turner's* high standard," and, thus, the fourth *Turner* factor "cannot justify [a] decision . . . to invalidate the regulation." *Overton*, 539 U.S. at 136.

**Conclusion of *Turner* Analysis**

Defendants have asserted and substantiated a set of legitimate penological interests rationally related to the restriction under review, particularly as it was applied in the specific circumstances underlying the damages claim to which our review here is limited. In addition, all of the other *Turner* factors bolster the conclusion that the challenged restriction, as applied, was a constitutionally valid exercise of prison administrative authority. Accordingly, on the record before us, we affirm the grant of summary judgment for defendants.

## REMAINING OBJECTIONS

Plaintiff concludes his appeal with three procedural objections, none of which have merit. First, he contends he was improperly denied leave to amend his pleadings, two years into the case and after defendants' motion for summary judgment had been filed and briefed. Plaintiff's motion did not specify what amendments he would make; rather, it sought leave to amend "in the event the

defendants [were] compelled to file discovery responses [and] in the event that the responses demonstrate that amendment is appropriate." R., Doc. 134 at 2. He later indicated that he wished "to expound on the issues of Internet legal materials and legal access to the courts - issues which were properly brought in the initial complaint but which require amendment to conform to the evidence." R., Doc. 196 at 29.

The motion was thoroughly considered under correct legal standards, *id.* Doc. 186 at 35-36 (magistrate judge's recommendation discussing numerous authorities and relevant legal principles), and denied because "[b]ased on the record before the court, [it found] that granting leave to the plaintiff to amend his Complaint would be untimely, that plaintiff did not diligently pursue the basis for such amendments, and that the facts behind such amendments would have been known to the plaintiff at the initiation of this action," *id.* at 36. *See also id.* Docs. 195 & 202 (district court orders adopting magistrate judge's recommendation). We owe considerable deference to this decision which, given the "thoroughly reasoned explanation[,] [does] not constitute an abuse of discretion." *Reeder v. Am. Econ. Ins. Co.*, 88 F.3d 892, 896 (10th Cir. 1996).

Second, plaintiff argues that he was improperly denied discovery. He does not describe the discovery he was denied, explain why he was entitled to it, or demonstrate how this prejudiced his case on summary judgment. Instead he

merely cites a list of some eight pleadings from the record and "incorporates" these into his appellate brief. Aplt. Opening Br. at 21. "Like other circuit courts, we do not consider this acceptable legal argument." *Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 623-24 (10th Cir. 1998). Plaintiff's pro se status does not except him from such established rules. *See Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992).

Finally, plaintiff objects to the affidavit defendants submitted in support of their motion for summary judgment, because it was "self-serving." Aplt. Opening Br. at 22. Of course the affidavit served defendants' cause; its purpose was to identify and explain the penological interests justifying the restriction under challenge. As noted in our discussion of the evidence relating to the *Turner* factors above, affidavits of this sort are a proper and effective means for prison officials to provide a record for the court's assessment of a challenged prison restriction. *See supra* at 9-10 (citing *Beard*, 126 S. Ct. at 2579, and *Wirsching*, 360 F.3d at 1199-1201).

For the reasons discussed above, the judgment of the district court is AFFIRMED.