NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

NOV 2 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| HUMAN RIGHTS DEFENSE CENTER, | No. 22-35762 |
| Plaintiff-Appellant, | D.C. No. 4:21-CV-05047-TOR |
| v. | MEMORANDUM* |
| JEFFREY A. UTTECHT, SUPERINTENDENT OF COYOTE RIDGE CORRECTIONS CENTER of the WASHINGTON DEPARTMENT OF CORRECTIONS, in his individual and official capacities; JOHN D. TURNER, MAILROOM SERGEANT of COYOTE RIDGE CORRECTIONS CENTER, in his individual and official capacities, | |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Eastern District of Washington
Thomas O. Rice, District Judge, Presiding

Argued and Submitted September 11, 2023
Seattle, Washington

Before: HAWKINS, W. FLETCHER, and R. NELSON, Circuit Judges.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

From September 2018 to November 2020, the Washington Department of Corrections (Department) prohibited prisoners from possessing "case law documents" (Policy #1).  Since September 2018, the Department has prohibited prisoners from possessing "legal materials . . . containing information about another Washington State incarcerated individual" (Policy #2).  Plaintiff Human Rights Defense Center (HRDC) claims Jeffrey Uttecht and Josh Turner (Defendants) violated its First Amendment free speech rights by barring and delaying delivery of one of its publications, *The Habeas Citebook: Ineffective Assistance of Counsel* (hereinafter *The Habeas Citebook*), to Washington state prisoners at the Coyote Ridge Corrections Center (CRCC) under both policies.  The district court granted summary judgment for Defendants.  We have jurisdiction under 28 U.S.C. § 1291 and review the district court's grant of summary judgment de novo.  *Caldwell v. City & Cty. of San Francisco*, 889 F.3d 1105, 1112 (9th Cir. 2018).  For the reasons below, we affirm in part, reverse and vacate in part, and remand.

1.      The district court concluded that HRDC's challenge to Policy #1 is moot because the policy was repealed in November 2020 and the voluntary cessation exception to mootness does not apply.  We agree that HRDC's challenge to Policy #1 is moot, but only for injunctive relief.  Under the factors set out in *Rosebrock v. Mathis*, the Department repealed Policy #1 before the litigation, and it repealed Policy #1 roughly three years ago—a sufficiently long time to render a case moot.

2

*See* 745 F.3d 963, 972 (9th Cir. 2014). But the repeal of Policy #1 does not moot HRDC's claim for damages. *See Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 902 (9th Cir. 2007). We reverse the order granting summary judgment to Defendants for damages from Policy #1 and remand for the district court to consider the merits in the first instance.

2.     The district court concluded that HRDC's challenge to Policy #2 was hypothetical, not alleged, and not shown on summary judgment. We disagree. HRDC alleged that Defendants cited Policy #2 as one of the reasons for rejecting *The Habeas Citebook*, and HRDC pointed to over 2,000 articles, pleadings, and reports it produces that would be rejected under Policy #2. HRDC sufficiently challenged Policy #2 as applied to the initial rejection of *The Habeas Citebook*, allowing it to seek damages, and as applied to its materials that will be rejected under Policy #2, allowing it to seek injunctive relief and declaratory relief.

HRDC has standing to seek to enjoin Defendants from implementing Policy #2 because injury is "certainly impending." *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). Turner testified that material relating to a Washington prisoner will be rejected, and pointed to one of HRDC's articles as an example of material that would be rejected under the ban. The past injury of the initial rejection of *The Habeas Citebook* under Policy #2 also supports the potential for future injury under the policy.

The district court also did not address HRDC's facial challenge to Policy #2. The relevant inquiry in determining whether a challenge is facial or as applied is whether the "claim and the relief that would follow . . . reach beyond the particular circumstances of the[] plaintiffs." *Doe v. Reed*, 561 U.S. 186, 194 (2010). Here, HRDC requested relief that would extend beyond its circumstances, including injunctive relief preventing Defendants "from continuing to violate the Constitution[.]"

We reverse the order dismissing claims related to Policy #2 and remand for the district court to address HRDC's claims that Policy #2 both facially and as applied violates the First Amendment, and whether HRDC meets the requirements for injunctive relief. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

3. The district court next concluded that there was only a temporary delivery delay of *The Habeas Citebook*, so Turner did not commit a First Amendment violation under *Crofton v. Roe*, 170 F.3d 957, 961 (9th Cir. 1999). But *Crofton* involved a short-term delay for a contraband inspection rather than a delay resulting from a content-based rejection. *See id*. Here, Turner did not forward *The Habeas Citebook* to the Publication Review Committee for two months, and at least one prisoner allegedly waited 493 days for delivery of the book after it was approved by the committee. And HRDC alleges that some copies of the book were not

4

delivered at all. The district court recognized that HRDC disputes that Turner ultimately placed all the copies of the book in the mailbag for delivery. And HRDC contends that Turner was the last person having custody of the books, and his job description suggests he is responsible for ensuring the ultimate delivery of the books. Thus, there remains a genuine dispute about Turner's responsibility for the alleged delivery failures. We vacate the district court's order on this issue and remand for the district court to assess if the delivery delays due to the initial content-based rejection were First Amendment violations, and if Turner can be individually liable.

4. The district court also concluded that Defendants did not violate HRDC's Fourteenth Amendment due process rights, relying on *Procunier v. Martinez*, 416 U.S. 396, 418–19 (1974), *overruled on other grounds by Thornburgh v. Abbot*, 490 U.S. 401 (1989). Here, HRDC received notice that the book was initially rejected, had a chance to appeal, and received a second-level review by the Publication Review Committee which resulted in the rejection being overturned. Yet, HDRC was never notified about the Publication Review Committee's final determination.

The district court misread *Procunier* in concluding that due process requires only notice of the refusal to deliver mail and an opportunity to appeal to a decision maker. The district court in *Procunier* required "that an inmate be notified of the rejection of a letter written by or addressed to him, that the author of the letter be

5

given a reasonable opportunity to protest that decision, and that complaints be referred to a prison official other than the person who originally disapproved the correspondence." 416 U.S. at 418–19. It did not purport to establish a complete list of what due process requires. The Supreme Court affirmed: "These requirements do not appear to be unduly burdensome, nor do appellants so contend." *Id.* at 419. Thus, the Supreme Court's test is whether the due-process-based requirements are "unduly burdensome" in the prison context. *See id.* But the right to learn of the prison censors' final decision was not at issue in *Procunier*. Outside the prison context, the right to learn of the final decision of the decision-maker is included in the right to due process. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). We vacate the district court's order on this claim and remand for the district court to address if it would be "unduly burdensome" to require the Publication Review Committee to notify HRDC of its final decision.

5.      Finally, the district court concluded that Uttecht did not personally participate in the alleged constitutional violations, so he is not individually liable as a supervisor under 42 U.S.C. § 1983. *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (citing *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978)). We disagree. Supervisory public officials can be liable for "their own culpable action or inaction in the training, supervision, or control of subordinates" and "their acquiescence in the constitutional deprivation. . . ." *Cunningham v. Gates*, 229 F.3d

6

1271, 1292 (9th Cir. 2000). The district court did not consider whether the direction that Uttecht provided to staff through the operational memorandum in October 2018 directing CRCC staff to follow Policy #1 and Policy #2 amounted to personal participation. And the district court recognized that the extent to which Uttecht participated in decision making about incoming mail is disputed, but still held that he did not personally participate. This is a genuine issue of material fact that may affect the outcome of the claim. We vacate the district court's order dismissing the claims against Uttecht and remand for the district court to assess his individual liability and defenses. The parties shall bear their own costs on appeal.

**AFFIRMED IN PART, REVERSED AND VACATED IN PART, AND REMANDED.**