**Kris ZIMMERMAN, Plaintiff,**

v.

**Charles SIMMONS, et al., Defendants.**

**Joseph E. Jacklovich, Sr., Plaintiff,**

v.

**Charles Simmons, et al., Defendants.**

**Prison Legal News, Inc., Plaintiff,**

v.

**Charles Simmons, Defendant.**

**Civil Action Nos. 00–3370–GTV, 01–3017–GTV, 02–4054–GTV.**

United States District Court,
D. Kansas.

April 28, 2003.

---

Kris Zimmerman, Joseph E. Jacklovich, Sr., Hutchinson, KS, Bruce M. Plenk, Lawrence, KS, for Plaintiffs.

Brian R. Johnson, The Law Offices of John M. Knox, Chartered, Lawrence, KS, Rebecca Ann Weeks, Kansas Attorney General, Loren F. Snell, Jr., Timothy G. Madden, Topeka, KS, for Defendants.

### MEMORANDUM AND ORDER

VANBEBBER, Senior District Judge.

Plaintiffs Kris Zimmerman and Joseph E. Jacklovich, Sr. are both inmates under

the supervision of the Kansas Department of Corrections ("KDOC"). Plaintiff Prison Legal News, Inc. is a Washington state non-profit corporation that publishes the monthly periodical Prison Legal News. Plaintiffs bring these actions seeking injunctive and declaratory relief, actual damages, and, in Plaintiff Jacklovich's case, punitive damages. They allege that Defendants violated their constitutional rights to freedom of speech and due process by their enforcement of regulations and policies that place restrictions on the receipt by inmates of certain publications. Plaintiffs Zimmerman and Jacklovich have sued Charles E. Simmons, individually and in his official capacity as Secretary of Corrections for the State of Kansas, Louis E. Bruce, individually and in his official capacity as Warden of the Hutchinson, Kansas Correctional Facility, and Patricia Keen, individually and in her official capacity as the Mail Room Supervisor of the Hutchinson Correctional Facility. Plaintiff Jacklovich has also sued William L. Cummings, individually and in his official capacity as Secretary Designate of the KDOC. Plaintiff Prison Legal News. has sued only Defendant Simmons. Plaintiffs in each case have filed motions for summary judgment (Doc. 66 in 00–3370–GTV; Doc. 76 in 01–3017–GTV; Doc. 29 in 02–4054–GTV), as have Defendants (Doc. 68 in 00–3370–GTV; Doc. 78 in 01–3017–GTV; Doc. 30 in 02–4054–GTV). For the reasons set forth below, Plaintiffs' motions for summary judgment are denied and Defendants' motions for summary judgment are granted.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is "material" if it is essential to the proper disposition of the claim. *Id.* Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* "Any evidence tending to show triable issues will be viewed in the light most favorable to the nonmoving party." *Black Hills Avia-*

*tion, Inc. v. United States,* 34 F.3d 968, 972 (10th Cir.1994) (citation omitted).

## II. DISCUSSION

At the heart of these cases is the constitutionality of certain KDOC regulations and policies that place restrictions on inmates' receipt of publications. The primary regulation at issue, K.A.R. 44–12–601(q)(1), provides:

Any inmate may receive books, newspapers, and periodicals except for those inmates assigned to the reception and diagnostic unit for evaluation purposes. All books, newspapers, and periodicals shall be purchased through special purchase orders. Only books, newspapers, and periodicals received directly from a publisher or vendor shall be accepted. However, an inmate shall be permitted to receive printed material, including newspaper and magazine clippings, if the clippings are included as part of a first-class letter that does not exceed one ounce in total weight.

For purposes of these cases, the critical provision of K.A.R. 44–12–601(q)(1) is that which requires an inmate to personally purchase publications only through his or her own correctional facility banking account—the only banking account an inmate is allowed to use without express written permission of the correctional facility administrator. In essence, this limitation prevents an inmate from receiving gift subscriptions or publications purchased by third parties or free subscriptions or publications.[1] This limitation is not confined solely to the purchase of subscriptions and publications, however. All items purchased for an inmate's use must be purchased through the inmate's facility account.

KDOC also issues interpretations of and guidance regarding Kansas statutes and regulations in what is known as an Internal Management Policy and Procedure ("IMPP") Manual. IMPP 11–101 addresses KDOC's Offender Privileges and Incentives System. Under that system, inmates—once they complete the initial intake process and are transferred to a correctional facility—are grouped into one of three levels. In general, Level I inmates receive the fewest privileges, while Level III inmates receive the most. Two specific provisions of IMPP 11–101 are at issue in these cases: (1) Level I inmates are prohibited from purchasing books (unless it is a "primary religious text"), magazines, or newspapers; and (2) a limit of $30 per month is placed on Level II and Level III inmates for purchase of items outside the facility canteen, including books (unless it is a "primary religious text"), magazines, or newspapers (although one newspaper subscription exceeding this amount is permissible once every three months).

Finally, in the event that a publication arrives at a KDOC correctional facility but is restricted for one of the above-noted reasons, K.A.R. 44–12–601(k) requires that the facility provide notice to the inmate to whom the publication is addressed. The inmate is then given the opportunity to contact the publisher if he or she desires, and either the inmate or the publisher may protest the decision to restrict the publica-

---

**1.** There is some dispute over whether inmates may receive free subscriptions or publications. Defendant Simmons admits that free copies of Prison Legal News have been rejected by KDOC facilities, but generally contends that K.A.R. 44–12–601(q)(1) does not specifically prohibit the receipt of free subscriptions or publications so long as the subscription or publication is entirely free and payment will not be required at a later date. For purposes of this opinion, the court will view the evidence in the light most favorable to Plaintiffs and assume that K.A.R. 44–12–601(q)(1) effectively prevents the delivery of free subscriptions or publications just as it does gift subscriptions or publications.

tion. The publisher itself is not directly notified of the decision by KDOC officials.

■ Plaintiffs advance a variety of related claims based on the enforcement of these regulations and policies. Plaintiffs contend that their First Amendment freedom of speech and Fourteenth Amendment due process rights [2] were violated by Defendants' enforcement against them of K.A.R. 44–12–601(q)(1), the regulation barring inmates' receipt of gift or free subscriptions. Plaintiff Jacklovich alleges that Defendants also engaged in a conspiracy to deprive him of those rights. In addition, Plaintiffs Zimmerman and Prison Legal News contend that Defendants' enforcement of IMPP 11–101's policies preventing Level I inmates from purchasing publications and limiting Level II and Level III inmates to $30 per month for the purchase of publications also violated their First and Fourteenth Amendment rights. Next, Plaintiff Jacklovich claims that his Fourteenth Amendment due process rights were violated by Defendants' "cookie cutter" and allegedly false responses to his grievances regarding the seizure of publications sent to him. Finally, Plaintiff Prison Legal News argues that Defendant Simmons's failure to provide direct notice to it that its publications were not reaching some of the inmates to whom they were addressed violated its Fourteenth Amendment due process rights. The court will address these claims in turn.

### A. Constitutionality of K.A.R. 44–12–601(q)(1) and IMPP 11–101 Provisions

■ The United States Supreme Court has noted that " '[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution,' nor do they bar free citizens from exercising their own constitutional rights by reaching out to those on the 'inside.' " *Thornburgh v. Abbott,* 490 U.S. 401, 407, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989) (citations omitted). It is recognized, however, "that these rights must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration," *Id.* (quoting *Turner v. Safley,* 482 U.S. 78, 85, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)), and when a case involves decisions of administrators of a state correctional facility, the court has "additional reason to accord deference to the appropriate prison authorities," *Turner,* 482 U.S. at 85, 107 S.Ct. 2254 (citing *Procunier v. Martinez,* 416 U.S. 396, 405, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974)).

■ "[B]y virtue of their convictions, inmates must expect significant restrictions, inherent in prison life, on rights and privileges free citizens take for granted." *McKune v. Lile,* 536 U.S. 24, 122 S.Ct. 2017, 2028, 153 L.Ed.2d 47 (2002). In general, prison authorities are permitted to retract rights of inmates if the retraction is in furtherance of legitimate penal objectives such as deterrence of crime, rehabilitation, and the need for internal prison security. *Pell v. Procunier,* 417 U.S. 817, 822–23, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). A prison regulation or policy that retracts those rights will be deemed constitutional "if it is reasonably related to legitimate penological interests." *Turner,* 482 U.S. at 89, 107 S.Ct. 2254. To determine whether a regulation or policy is reasonable, the court examines four fac-

---

2. Plaintiffs in these cases consistently refer to their due process rights as arising under the Fifth and/or Fourteenth Amendments. Due process claims under the Fifth Amendment may only be maintained against federal officials. See *United States v. Lanza,* 260 U.S. 377, 382, 43 S.Ct. 141, 67 L.Ed. 314 (1922). Because Plaintiffs' claims in these cases are only against state officials, their due process claims may only be brought under the Fourteenth Amendment.

tors: (1) whether the regulation or policy is rationally related to a legitimate governmental interest; (2) whether there are alternative means of exercising the right; (3) what effect accommodation of the interest would have on guards, other inmates, and the allocation of prison resources; and (4) whether there are ready alternatives with which the prison could continue to serve its interests without impinging on constitutional rights. *Id.* at 89–90, 107 S.Ct. 2254.

As noted, Plaintiffs challenge three KDOC regulations and policies enforced by Defendants. Plaintiffs question the constitutionality of K.A.R. 44–12–601(q)(1), which bars inmates' receipt of gift or free publications or subscriptions. Plaintiffs Zimmerman and Prison Legal News also challenge the constitutionality of IMPP 11–101's policies preventing Level I inmates from purchasing publications and limiting Level II and Level III inmates to $30 per month for the purchase of publications. The court finds that no genuine issues of fact are presented by these claims and concludes that K.A.R. 44–12–601(q)(1) and IMPP 11–101's policies are reasonably related to legitimate penological interests and are therefore valid.

■ With regard to the first Turner factor, Defendants contend that the regulation and policies further several basic governmental interests. First, they maintain that the requirement that all publications be purchased through the inmate's correctional facility banking account promotes KDOC's internal security objective of controlling, managing, and tracking property in the correctional facility in order to identify the existence of prohibited activities. The requirement allows correctional officials to identify the source and distribution of funds and property coming into and out of the prisons. If an inmate receives or is found in possession of property that he or she did not personally purchase, KDOC officials may investigate whether the property was obtained in violation of criminal law or KDOC regulations against theft, drug dealing, gambling, extortion, or dealing or trading with another inmate. For instance, the restriction eliminates the possibility that the family or friends of one inmate could purchase a subscription or publication for another inmate in order to satisfy the first inmate's drug or gambling debt or to secure the first inmate's safety. Second, Defendants maintain that the privileges and incentives provisions of IMPP 11–101 are integral correctional facility management tools because they promote order through positive inmate behavior and deter inmates from committing future crimes or rules violations. Defendants also note that the monetary limitation on outside purchases helps to ensure the collection of inmates' other financial obligations, such as restitution, child support, and court filing fees.

After careful review of the record, the court concludes that K.A.R. 44–12–601(q)(1) and IMPP 11–101's policies are rationally related to the legitimate governmental interests outlined by Defendants. They promote the internal security of the prisons, help to deter inmates from committing future crimes or rules violations, and aid in inmate rehabilitation. They are content-neutral, and the logical connection between the restrictions and the governmental interests is not so remote as to render the regulation and policies arbitrary or irrational. See *Turner*, 482 U.S. at 89–90, 107 S.Ct. 2254.

The court notes Plaintiffs' reliance on the Ninth Circuit's decision in *Crofton v. Roe,* 170 F.3d 957 (9th Cir.1999) to support their argument that KDOC's ban on gift subscriptions is unconstitutional. The court believes that case to be distinguishable. In Crofton, a Washington state prisoner challenged the enforcement of a

Washington state regulation nearly identical to K.A.R. 44–12–601(q)(1). 170 F.3d at 958. Defendants advanced, *inter alia,* the following rationale for its blanket ban on gift publications: "[I]f inmates were allowed to receive gift publications, inmates could strike deals within the prison and demand that friends or family members send books in lieu of cash payments. If the friends or family of an inmate did not comply, the inmate's family or friends could suffer retaliation." *Id.* at 959–60. The Ninth Circuit rejected the argument on the grounds that the defendants failed to develop a sufficient record to show that they had actually experienced any of the problems they described or that the allowance of gift subscriptions would actually interfere with their ability to monitor the source of items entering the prison. *Id.* at 960–61. Such is not the case here. First, Defendants have offered uncontroverted evidence regarding a KDOC Privilege Level I inmate who arranged to have his mother send a gift subscription to another inmate, who in turn would purportedly give the subscription back to the Level I inmate. This evidence is sufficient to demonstrate that Defendants have actually experienced some of the problems of which they complain—i.e., uncertainty over whether the Level I inmate's mother sent the gift subscription as part of an extortion scheme, to pay off a drug or gambling debt, or simply to allow her son to avoid the prohibition against Level I inmates receiving subscriptions or publications. Second, Defendants have also offered uncontroverted evidence that KDOC officials are not always able to identify who paid for a gift subscription or publication for a particular inmate. Because the critical issue with regard to these gift subscriptions is who paid for them, this evidence is sufficient to show that Defendants would be hindered in their ability to monitor the source of items coming into their prisons. In sum, Defendants have developed a suffi-

cient record to show that their regulation and policies are rationally related to legitimate governmental interests. Crofton is distinguishable and the court will not rely on it.

The court also notes Plaintiffs' reliance on *Spellman v. Hopper,* 95 F.Supp.2d 1267 (M.D.Ala.1999) for the proposition that the provision of IMPP 11–101 banning all subscriptions and publications to Level I inmates is unconstitutional. Plaintiffs' reliance on this case is misguided as, once again, it is distinguishable from the case at hand. In Spellman, the court declared unconstitutional an Alabama Department of Corrections regulation imposing an absolute prohibition on administrative segregation prisoners' receipt of subscription magazines and newspapers. 95 F.Supp.2d at 1287. However, unlike the Level I classification for prisoners in Kansas, the Spellman court specifically noted that "[a]ssignment to administrative segregation is not a disciplinary measure." *Id.* at 1268. In fact, the Spellman court specifically implied that had the regulation been part of an incentive or disciplinary program, it would have been reasonably related to a legitimate penological interest. *Id.* at 1281–82. If Spellman supports any parties' position in this case, it supports Defendants' position, not Plaintiffs'.

Having determined that Defendants have satisfied the first part of the Turner test, the court need not consider the remaining three factors. *Morrison v. Hall,* 261 F.3d 896, 901, 904 (9th Cir.2001) (citations omitted) (stating that the first Turner factor constitutes a *sine qua non* ); *Scott v. Miss. Dep't of Corrs.,* 961 F.2d 77, 80–81 (5th Cir.1992) (stating that a court is not required to weigh evenly, or even consider, the final three factors of the Turner test once the first factor is satisfied). Nevertheless, the court has reviewed the evidence and arguments with respect to

these final three factors and concludes that none of the factors weigh in Plaintiffs' favor. Thus, the court finds as a matter of law that the relevant provisions of K.A.R. 44–12–601(q)(1) and IMPP 11–101 are reasonably related to legitimate penological interests and are, therefore, valid.

## B. Jacklovich's Conspiracy Claim

 In addition to his claim that Defendants' enforcement of K.A.R. 44–12–601(q)(1) violated his constitutional rights, Plaintiff Jacklovich also asserts a claim that Defendants conspired to violate those rights. In order to prevail on a conspiracy claim under § 1983, a plaintiff must prove the existence of a conspiracy and the deprivation of a constitutional right. *Thompson v. City of Lawrence*, 58 F.3d 1511, 1517 (10th Cir.1995) (citation omitted). Because the court has already determined that Plaintiff Jacklovich has failed to establish that Defendants violated his constitutional rights, his conspiracy claim likewise fails.

## C. Jacklovich's Due Process Claim

Plaintiff Jacklovich's final claim is that Defendants violated his due process rights by issuing "cookie cutter" and allegedly false responses to his grievances regarding the seizure of publications sent to him. Defendants have raised the defense of qualified immunity in response to this claim.

 Qualified immunity shields an individual government official performing discretionary functions from liability for civil damages insofar as his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (citations omitted). The defense of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106

S.Ct. 1092, 89 L.Ed.2d 271 (1986). It constitutes "an *immunity from suit* rather than a mere defense to liability...." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

 Because of the extremely broad protection qualified immunity affords to government officials, the court addresses summary judgment motions that raise the defense differently from other summary judgment motions. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir.2001) (citation omitted). Once a defendant asserts the qualified immunity defense, the plaintiff assumes a " 'heavy two-part burden.' " *Id.* at 1128 (quoting *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995) (further citation omitted)). "The plaintiff must first establish that the defendant's actions violated a constitutional or statutory right. If the plaintiff establishes a violation of a constitutional or statutory right, he must then demonstrate that the right at issue was clearly established at the time of the defendant's unlawful conduct." *Id.* (internal citations and quotation marks omitted). "[A]lthough [the court] review[s] the evidence in the light most favorable to the nonmoving party, the record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity." *Id.* (internal citation omitted). If the plaintiff satisfies the two-part burden, the burden shifts to the defendant to show that "no material issue of fact remain as to whether his or her actions were objectively reasonable in light of the law and the information he or she possessed at the time." *Martin v. Bd. of County Comm'rs*, 909 F.2d 402, 405–06 (10th Cir.1990) (quoting *Zuchel v. Spinharney*, 890 F.2d 273, 274 (10th Cir.1989) (further citations omitted)).

Here, Plaintiff Jacklovich has offered no evidence to support his due process claim. He has not satisfied his heavy burden of

showing that Defendants' actions violated his due process rights. Because Plaintiff Jacklovich has not established the violation of a constitutional right, Defendants are entitled to summary judgment on this claim.

### D. Prison Legal News's Due Process Claim

██ As noted earlier, if a publication arrives at a KDOC correctional facility but is restricted under K.A.R. 44–12–601(q)(1) or IMPP 11–101, K.A.R. 44–12–601(k) requires that the facility provide notice to the inmate to whom the publication is addressed. The inmate is then given the opportunity to contact the publisher if he or she desires, and either the inmate or the publisher may protest the decision to restrict the publication. The publisher itself is not directly notified of the decision by KDOC officials. Plaintiff Prison Legal News claims that this failure to directly notify it when its publications are not delivered to KDOC inmates violates its due process rights. The court disagrees.

██ The decision to withhold delivery of or censor mail to prisoners must be "accompanied by minimum procedural safeguards." *Procunier*, 416 U.S. at 417, 94 S.Ct. 1800, overruled on other grounds by *Thornburgh*, 490 U.S. at 413–14, 109 S.Ct. 1874. The court believes that KDOC's notification procedures for publications restricted under K.A.R. 44–12–601(q)(1) or IMPP 11–101 provide a sufficient minimum procedural safeguard to protect Plaintiff Prison Legal News's due process rights. The court is not persuaded by Plaintiff's reliance on the Fourth Circuit's decision in *Montcalm Publishing Corp. v. Beck*, 80 F.3d 105 (4th Cir.1996) to support its position, a case the court believes is distinguishable. In Montcalm, the court reviewed a Virginia Department of Corrections ("VDOC") rule that allowed a prison warden or superintendent to approve or disapprove of publications on a "case-by-case and/or issue-by-issue" basis. 80 F.3d at 106. Several issues of a particular magazine had been disapproved for receipt by inmates on obscenity grounds. *Id.* at 107. The Fourth Circuit, specifically noting that all prisoners in the VDOC system were precluded from receiving those issues, held that the publisher was entitled to notice of the restriction. *Id.* at 109. Here, the only prisoners precluded from receiving Plaintiff's publication are those who received the publication as a gift or are on Level I inmate status. The approval or disapproval of the publication is not on an case-by-case or issue-by-issue basis depending on the content of the publication. It is not applicable to all inmates. It is purely a procedural decision applicable to all gift publications and Level I inmates. Given this, the court concludes that notification to the inmate alone is a sufficient minimum procedural safeguard which does not violate Plaintiff Prison Legal News's due process rights.

To the extent that Defendants have raised additional arguments in their motions for summary judgment, the court need not address them here as summary judgment is already granted to Defendants on all of Plaintiffs' claims.

IT IS, THEREFORE, BY THE COURT ORDERED that Plaintiffs' motions for summary judgment (Doc. 66 in 00–3370–GTV; Doc. 76 in 01–3017–GTV; Doc. 29 in 02–4054–GTV) are denied, and Defendants' motions for summary judgment (Doc. 68 in 00–3370–GTV; Doc. 78 in 01–3017–GTV; Doc. 30 in 02–4054–GTV) are granted.

The cases are closed.

Copies of this order shall be transmitted to counsel of record.

**IT IS SO ORDERED.**